**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS BELLES,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | **No.** |
| **v.** | : | |
| | : | |
| **WILKES-BARRE AREA SCHOOL DISTRICT,** | : | |
| **FRANK CASTANO, and SEAN FLYNN,** | : | |
| Defendants. | : | **JURY TRIAL DEMANDED** |

**COMPLAINT**

## I. PRELIMINARY STATEMENT

This is an action for an award of damages, declaratory and injunctive relief, attorneys' fees and other relief on behalf of Plaintiff, Thomas Belles (hereinafter "Plaintiff"). Plaintiff was an employee of Defendant Wilkes-Barre Area School District, (hereinafter "WBASD"), who has been harmed by the disability-based discrimination and retaliatory practices as well as other improper conduct by WBASD and its agents, servants, and representatives.

This action is brought under the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §12101 *et seq.*, and the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951 *et seq.*

## II. JURISDICTION AND VENUE

1.	The original jurisdiction and venue of this Court is invoked in this District pursuant to Title 42 U.S.C. § 2000e-5(f), 28 U.S.C. §1331, and 1391, 2201, 2202, 1343 and the claim is substantively based on the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*

2.	The Supplemental Jurisdiction of this Court is invoked pursuant to Title 28 U.S.C.

1

§ 1367, to consider Plaintiff's claim arising under the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951 *et seq.*

3.      Venue is proper in the Middle District of Pennsylvania in that some or all of the events complained of herein occurred in Luzerne County, Pennsylvania.

4.      All conditions precedent to the institution of this suit have been fulfilled. As to the federal ADA claims, Plaintiff has invoked the procedure set forth in the ADA and has received a Notice of Right to Sue as required. On or about March 24, 2015, Plaintiff filed a Charge of Discrimination with the EEOC against Defendant alleging, *inter alia*, disability-based employment discrimination and retaliation. On March 13, 2017, a Notice of Right to Sue was issued by the Equal Employment Opportunity Commission.

5.      This action has been filed within ninety (90) days of receipt of said Notice.

6.      More than one year has elapsed since the filing of Plaintiff's Complaint with the PHRC.

## III. <u>PARTIES</u>

7.      Plaintiff, Thomas Belles, is a forty-seven (47) year-old adult male citizen and resident of the Commonwealth of Pennsylvania.

8.      Plaintiff has been employed by WBASD since 1988 as a social studies teacher at Leo E. Solomon-Plains Memorial Junior High School.

9. Defendant WBASD, is a public school district organized under the laws of the Commonwealth of Pennsylvania with a principle place of business in Wilkes-Barre, Pennsylvania.

10.      At all times relevant hereto, Frank Castano (hereinafter "Castano") was the director of WBASD's human resources department. At all times relevant hereto, Castano was an agent,

2

servant, workman and/or employee of WBASD, acting and/or failing to act within the scope, course and authority of his employment and his employer, WBASD. At all times relevant, Castano was acting in his supervisory and personal capacity.

11.     At all times relevant hereto, Sean Flynn (hereinafter "Flynn") was the principal of WBASD's Leo E. Solomon-Plains Memorial Junior High School. At all times relevant hereto, Flynn was an agent, servant, workman and/or employee of WBASD, acting and/or failing to act within the scope, course and authority of his employment and his employer, WBASD. At all times relevant, Flynn was acting in his supervisory and personal capacity.

12.     At all times relevant herein, Plaintiff was an "employee" as defined by the ADA, 42 U.S.C. § 12111(4), and is subject to the provisions of this Act.

13.     At all times relevant herein, Plaintiff was a "person" as defined the ADA, 42 U.S.C. § 12111(7), and is subject to the provisions of said Act.

14.     At all times relevant herein, Plaintiff was "disabled" as defined by the ADA, 42 U.S.C. § 12102(1), and is subject to the provisions of said Act.

15.     At all times relevant herein, Plaintiff was a "qualified individual" as defined by the ADA, 42 U.S.C. § 12111(8), and is subject to the provisions of said Act.

16.     At all times relevant herein, WBASD was an "employer" as defined by the ADA, 42 U.S.C. § 12111(5), and is subject to the provisions of said Act.

17.     At all times relevant herein, WBASD was a "person" as defined by the ADA, 42 U.S.C. § 12111(7), and is subject to the provisions of said Act.

18.     At all times relevant hereto, WBASD acted by and/or failed to act by and through the conduct of its officers, managers, agents, and employees, all acting within the scope and course

3

of their employment.

19.     WBASD has, acting through its agents, servants and representatives, on more than one occasion, met with Plaintiff, and has heard allegations from Plaintiff of disability-based harassment, disability-based discrimination, and retaliation.

20. At all relevant times herein, WBASD knew, or had reason to know, of the actions and inaction alleged herein and/or has personally participated in some of said actions and is ultimately responsible for same.

21.     At all times material hereto, WBASD employed more than fifteen employees.

## IV. CAUSES OF ACTION

22.     Plaintiff was hired by WBASD in 1988 as a social studies teacher at Leo E. Solomon-Plains Memorial Junior High School, as well as a junior high assistant wrestling coach.

23.     At all times material hereto, Plaintiff was qualified for his positions with WBASD and performed his jobs in a proper and competent manner, was a dedicated and diligent employee, and had a good work record.

24.     At all times relevant hereto, Plaintiff suffered from multiple serious medical conditions and disabilities, the identity of which is omitted from this Complaint because of privacy concerns with medical diagnoses, but which were expressly made known to WBASD by Plaintiff.

25.     Plaintiff's serious medical conditions are disabilities as that term is defined by the ADA, as amended by the ADAA, because they substantially limit him in one or more major life activities and require, inter alia, the use of a wheelchair for his lifetime.

26.     In 2008, Plaintiff was appointed the head junior high school wrestling coach, a position he held until 2014.

4

27.     In this six-year period, the junior high school wrestling team won the conference championship four times, and was runner-up two times.

28.     On or about May 22, 2014, Plaintiff was appointed the head coach of wrestling at James M. Coughlin High School.

29.     At the time of his appointment to head coach of the high school, his record was 84-11, reflecting extraordinary success as a coach.

30.     At the time that Plaintiff was hired in 1988, at the time he was appointed head junior high wrestling coach in 2008, and at the time he was appointed head coach of wrestling at James M. Coughlin High School in May 2014, WBASD knew of Plaintiff's disabilities and need for reasonable accommodations.

31.     Upon being appointed head coach of wrestling at James M. Coughlin High School, Plaintiff informed WBASD that the wrestling room, which was located in the high school's basement, was not wheelchair accessible.

32.     WBASD, despite Plaintiff's protected conduct and request for accommodation under the ADA, and its knowledge that Plaintiff's disabilities resulted in his use of a wheelchair, took no remedial action, failed to engage in the ADA-mandated interactive process, and did not offer to help Plaintiff in any way.

33.     Instead, following Plaintiff's appointment as head coach of wrestling in May 2014, WBASD began harassing and discriminating and retaliating against Plaintiff for being disabled and requiring accommodations.

34.     Robert Hawkins ("Hawkins"), the assistant coach of wrestling who had been appointed acting head coach the year before, placed numerous calls to parents, pressuring them to

5

attend school board meetings to protest Plaintiff's appointment.

35.    Hawkins called parents and the school board relentlessly to ridicule Plaintiff and his abilities as a coach.

36.    Hawkins enticed and pressured students to contact WBASD's school administration to protest Plaintiff's appointment.

37.    Hawkins then went before the school board to protest Plaintiff's appointment, stating that Plaintiff couldn't "do the books" because of his disabilities.

38.    Appointed assistant coach Reuben Profit also attended this school board meeting to protest Plaintiff's appointment.

39.    Hawkins' and Profit's actions were undertaken with the knowledge, consent, and encouragement of WBASD.

40.    At all times, WBASD failed to cease this harassment, discrimination, hostile work environment, and discrediting of Plaintiff.

41.    Plaintiff's abilities as a coach were questioned, and he was publicly criticized, humiliated, and degraded. By this orchestrated strategy, as well as by engaging in zero interactive process and offering zero accommodations, WBASD planned, schemed, and hoped to oust Plaintiff from coaching.

42.    False statements were made regarding student discontent and community unrest with regard to Plaintiff's appointment as head coach. In addition to being motivated by a refusal to accommodate Plaintiff in any respect, WBASD was motivated by pure discriminatory animus in not wanting a disabled person in a wheelchair to be the wrestling coach.

43.    WBASD began undercutting Plaintiff's authority as head coach, including, inter

6

alia, freezing him out of critical hiring decisions, forcing him to have coaches on his staff that he did not want and/or trust, and telling Plaintiff that there was a "new policy" that he couldn't split salaries, thus depriving Plaintiff of the ability to select his assistant coach and determine salaries.

44.     In an unofficial conference of the school board, Hawkins questioned how Plaintiff could coach if he "couldn't get on a mat," and presented a "parade of horribles," exaggerating potential consequences of Plaintiff remaining head coach and saying, inter alia, that they would have to "hire a nurse" to care for Plaintiff, thus regarding and/or perceiving Plaintiff as a burden and liability to WBASD due to his disabilities.

45.     Instead of engaging in the interactive process, WBASD complained to Plaintiff about where the team could hold meets and practices, allegedly focusing on how Plaintiff's disabilities and the use of a wheelchair would adversely impact or impede the team, rather than focusing on reasonable accommodations for Plaintiff's disability.

46.     Plaintiff met with both WBASD's superintendent and assistant superintendent, who advised Plaintiff that the school board did not want to pay for a wheelchair lift or any accommodations.

47.     Plaintiff was further harassed and berated in this meeting by the superintendent because he was asking for accommodations and asserting his rights.

48.     Also at this meeting, Castano stated that he wanted to limit Plaintiff's role.

49.     Castano further stated that he thought Plaintiff would be "happy" making high school practice twice a week, and that they could "just throw Plaintiff in another wheelchair to carry him downstairs" for high school practices.

50.     This harassment and abuse continued unabated from May to August 2014. At all

7

relevant times, Plaintiff complained about the above.

51.     On or about August 27, 2014, after enduring more than three months of constant harassment, discrimination, retaliation, and pressure to step down, Plaintiff was constructively discharged as head coach of wrestling and was forced to resign.

52.     Plaintiff's was constructively discharged as head coach of wrestling after Plaintiff's requests for accommodation were denied without WBASD engaging in the interactive process in any manner, despite WBASD having specific knowledge from Plaintiff that Plaintiff needed accommodation.

53.     Plaintiff believes and therefore avers that the forced resignation of his employment as head coach is a violation of the ADA due to the aforementioned conduct.

54.     Following Plaintiff's constructive discharge, in or around December 2015, Plaintiff was required to be fingerprinted for school safety/background checks.

55.     Plaintiff informed WBASD that due to his disability, he had to go through additional measures to have proper and usable fingerprints taken; specifically, Plaintiff needed to have his fingerprints taken by the Plains Police Department.

56.     Plaintiff also had to have his fingerprints taken electronically through the state twice because his fingerprints would not pass the cogent test due to his disability.

57.     Plaintiff specifically advised WBASD's human resources department and Flynn that there might be a delay in the state police providing his fingerprints.

58.     WBASD, despite Plaintiff's protected conduct and request for accommodation under the ADA, took no remedial action, failed in engage in the ADA-mandated interactive process, and did not offer to help Plaintiff in any way.

8

59. In fact, Flynn harassed and discriminated against Plaintiff by requiring Plaintiff to be escorted throughout the school at all times.

60. Flynn further berated Plaintiff in front of teachers, school personnel, and students for not having his fingerprints taken. This was further retaliation also for Plaintiff having engaged in protected conduct in asserting his rights and asking for accommodation.

61. On or about April 11, 2016, WBASD consolidated the Coughlin and G.A.R. wrestling programs, at which time, the G.A.R. wellness center was designated as the new wrestling room where practices and meets would be held.

62. The G.A.R. wellness center is wheelchair accessible, and Plaintiff would have required minimal accommodations.

63. In or around July 2016, Plaintiff therefore requested to be reinstated as head coach of wrestling. This constituted a repeated demand for accommodation (now a very minimal burden, if any, on WBASD) and a renewed request for Defendants to refrain from discrimination and harassment.

64. Plaintiff's request for reinstatement went unheeded by WBASD, despite the fact that WBASD's wrestling program had significantly declined following Plaintiff's forced resignation, with many students electing to not wrestle and approaching Plaintiff regarding his absence and their desire to have him back in the program.

65. Instead, Parsnick, who was previously the assistant coach at G.A.R., remained the head coach of wrestling.

66. Parsnick, who is not disabled, has less seniority, training, and experience than Plaintiff with regard to wrestling.

9

67.     Wrestling was the part of Plaintiff's life that reminded him of his life before his disabilities, which occurred due to a tragic and catastrophic accident and this coaching was and is an essential part of his mental and occupational well-being.

68.     Following Plaintiff's constructive discharge, Plaintiff could not even bring himself to go to a wrestling meet, due to his extreme emotional distress that his unfortunate disabilities had allowed WBASD to oust him as wrestling coach. More devastating was the devaluation and insult to Plaintiff's knowledge as coach because he was in a wheelchair.

69.     WBASD was responsible and liable for the conduct of its principals, employees, and agents for subjecting Plaintiff to a discriminatory employment and work environment, and for failing to protect Plaintiff from unlawful conduct.

70.     As a direct result of the hostile and antagonistic conduct by WBASD's supervisory employees, Plaintiff was deprived of his employment as head coach of wrestling with WBASD.

71.     As a direct result of WBASD's conduct, Plaintiff has been irrevocably damaged.

72.     As a direct result of WBASD's conduct, Plaintiff has suffered and continues to suffer severe emotional, psychological, and physical distress.

73.     As a direct result of WBASD's conduct, Plaintiff's career, professional, and job opportunities have been impaired and damaged and he has suffered a loss of earnings and earning capacity.

## COUNT I
## PLAINTIFF v. WBASD
## VIOLATION OF THE ADA

74.     Paragraphs 1 through 73 inclusive, are incorporated by reference as if fully set forth at length herein.

10

75.     At all times relevant herein, Plaintiff was disabled, regarded as and/or perceived as disabled by WBASD.

76.     Plaintiff was able to perform all of the essential functions of his position with or without accommodation.

77.     By reason of the conduct set forth above, WBASD intentionally, knowingly, and purposefully violated the ADA by invidiously discriminating against the qualified Plaintiff who had a disability.

78.     By its actions and inactions through its agents, servants, and representatives, WBASD created, maintained, and permitted to be maintained a work environment, which was hostile to persons such as Plaintiff who have a record of or are perceived as having a disability.

79.     As a direct result of Plaintiff's disability and/or request for accommodation, Plaintiff was forced to resign his employment.

80.     WBASD's aforesaid actions were outrageous, egregious, malicious, intentional, willful, wanton, and in reckless disregard of Plaintiff's rights.

## COUNT II
## PLAINTIFF v. WBASD
## RETALIATION UNDER THE ADA

81.     Paragraphs 1 through 80 inclusive, are incorporated by reference as if fully set forth at length herein.

82.     By the acts complained of, WBASD has retaliated against Plaintiff for exercising his rights under the ADA, namely requesting and/or using leave or a reasonable accommodation, in violation of the ADA.

83.     Plaintiff is now suffering and will continue to suffer irreparable injury and

monetary damages as a result of WBASD's retaliatory practices unless and until this Court grants

relief.

## COUNT III
## PLAINTIFF v. WBASD
## VIOLATION OF THE PHRA

84.    Paragraphs 1 through 83, inclusive, are incorporated by reference as if fully set

forth at length herein.

85.    The unlawful actions of WBASD acting as aforesaid, constitute a violation of 43

Pa. Stat. Ann. § 951 *et seq*. of the Pennsylvania Human Relations Act. The said unlawful practices

for which WBASD is liable to Plaintiff include, but are not limited to, treating Plaintiff in a

disparate and discriminatory manner and retaliating against Plaintiff because of his disability,

because he had made requests for leave and/or reasonable accommodation, and because he

engaged in protected conduct under the PHRA.

86.    As a direct result of WBASD's willful and unlawful actions in treating employees,

including Plaintiff, in a discriminatory and retaliatory manner in violation of Title 43 Pa. Stat. Ann.

§ 951 *et seq*. of the Pennsylvania Human Relations Act, Plaintiff has sustained severe emotional

distress, loss of earnings, plus the failure of the aforementioned benefits, plus loss of future earning

power, plus back pay, front pay and interest due thereon.

## COUNT IV
## PLAINTIFF v. CASTANO and FLYNN
## AIDING AND ABETTING UNDER THE PHRA

87.    Paragraphs 1 through 86, inclusive, are incorporated by reference as if fully set

forth at length herein.

88.    The unlawful actions of Castano and Flynn acting as aforesaid, constitute a

12

violation of Title 43 Pa. Stat. Ann. § 951 *et seq.* of the Pennsylvania Human Relations Act. The said unlawful practices for which Castano and Flynn are liable to Plaintiff include, but are not limited to, treating Plaintiff is a disparate and discriminatory manner and retaliating against Plaintiff because of his disability, because he had made requests for leave and/or reasonable accommodation, and because he engaged in protected conduct under the PHRC.

89. As a direct result of Castano and Flynn's willful and unlawful actions in treating employees, including Plaintiff, in a discriminatory manner in violation of Title 43 Pa. Stat. Ann. § 951 *et seq.* of the Pennsylvania Human Relations Act, Plaintiff has sustained severe emotional distress, loss of earnings, plus the failure of the aforementioned benefits, plus loss of future earning power, plus back pay, front pay and interest due thereon.

90. At all relevant times herein, Castano and Flynn knew, or had reason to know, of the actions alleged herein and/or personally participated in some of said actions and are ultimately responsible for same, and aided and abetted the illegal conduct of WBASD.

## STATEMENT OF FACTS JUSTIFYING
## THE IMPOSITION OF PUNITIVE AND LIQUIDATED DAMAGES
## UNDER THE ADA

91. Paragraphs 1 through 90, inclusive, are incorporated by reference as if fully set forth at length herein.

92. At all times relevant hereto, WBASD knew or should have known of the pattern of conduct in which its principals, employees, and agents had engaged and in which they continued to engage.

93. At all times relevant hereto, WBASD knew or should have known that the aforesaid pattern of conduct was in violation of law and WBASD's stated policies and terms of employment.

13

94.     Despite such knowledge, WBASD failed to adequately investigate, discipline, or discharge its agents, servants, and representatives who discriminated against Plaintiff and created a hostile work environment.

95.     WBASD failed and refused to properly protect and support Plaintiff, and in fact subjected or permitted him to be subjected to discrimination and retaliation.

96.     At all times relevant hereto, WBASD acted willfully, wantonly, recklessly, and with an outrageous disregard and indifference to the rights, safety, and well-being of Plaintiff and other employees similarly situated.

## V.  **PRAYER FOR RELIEF**

97.     Paragraphs 1 through 96 inclusive, are incorporated by reference as if fully set forth at length herein.

WHEREFORE, Plaintiff respectfully requests the Court to:

a.  Exercise jurisdiction over his claim;

b.  Issue declaratory and injunctive relief declaring the above-described practices to be unlawful, and enjoining their past and continued effects;

c.  Award compensatory damages, including but not limited to reimbursement of all medical and psychological expenses; back pay and future earnings and loss of earning capacity in the amount of wages and benefits; damages for Plaintiff's mental, psychological, and emotional injuries, anguish, humiliation, anxiety, physical and mental pain, and suffering and loss of life's pleasures, all of which may be permanent, together with interest, resulting from WBASD's discriminatory and unlawful conduct;

14

d.  Reinstate Plaintiff to his former position together with back pay and compensatory damages;

e.  Award punitive and/or liquidated damages as may be permitted under law;

f.  Award Plaintiff attorneys' fees and costs; and

g.  Grant such other relief, as the Court deems just and equitable.

## VI.  **JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

HAHALIS & KOUNOUPIS, P.C.

By:_____
GEORGE S. KOUNOUPIS, ESQUIRE
20 East Broad Street
Bethlehem, PA  18018
(610) 865-2608
Attorneys for Plaintiff

Date:  June 9, 2017

15