# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS BELLES,

                Plaintiff,

      v.

WILKES-BARRE AREA SCHOOL
DISTRICT, FRANK CASTANO, and
SEAN FLYNN,

                Defendants.

CIVIL ACTION NO. 3:17-CV-01016

(MEHALCHICK, M.J.)[1]

## MEMORANDUM OPINION

Plaintiff Thomas Belles filed a complaint on June 9, 2017, asserting several discrimination claims against defendants Wilkes-Barre Area School District (the "District"), Frank Castano, and Sean Flynn.[2] (Doc. 1). Belles asserts violations of the Americans with Disability Act, 42 U.S.C. §§ 12101-12213, and the Pennsylvania Human Rights Act, 43 Pa.C.S.A. §§ 951-963, specifically alleging that the District and Castano (collectively, "Defendants") denied him reasonable accommodations following his appointment as head coach to the high school wrestling team, subjected Belles to discrimination through a hostile work environment, retaliated against him, and constructively discharged him from his appointment as head coach, all because of his disability. (Doc. 1).

Before the Court is Defendants' motion for summary judgment. (Doc. 24). Both

---

[1] In October 2017, the parties consented, pursuant to 28 U.S.C. § 636(c)(1), to the undersigned's jurisdiction to adjudicate all pretrial and trial proceedings relating to the action. (Doc. 8, at 14; Doc. 9).

[2] Belles has voluntarily withdrawn all claims against Flynn. (Doc. 31, at 12 n.2)

parties have provided statements of material facts and fully briefed the motion, which is now ripe for review. (Doc. 25; Doc. 26; Doc. 30; Doc. 31; Doc. 32). For the following reasons, Defendants' motion is **GRANTED**, and the Clerk of the Court is directed to close this case.

I.    SUMMARY OF MATERIAL FACTS

The factual background is taken from the parties' respective statements of material facts, unless otherwise indicated. (Doc. 25; Doc. 30). Where the parties dispute certain facts, those disputes are noted. In addition, the facts have been taken in the light most favorable to the plaintiff as the non-moving party, with all reasonable inferences drawn in his favor. Where Belles disputes a fact set forth by Defendants but fails to provide a citation to the record supporting denial thereof, that fact will be deemed to be admitted. Unsupported "assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F.Supp.2d 490, 493 (E.D. Pa. 2010).

Long before the circumstances giving rise to this action, Belles, in a tragic ATV accident, became paraplegic. (Doc. 26, at 1, ¶ 3; Doc. 30, at 9, ¶ 1). Wheelchair-bound and without full functioning of his hands, Belles nevertheless became a middle school teacher and successful wrestling coach for the District. (Doc. 26, at 1, ¶ 1-2; Doc. 30, at 1, ¶¶ 1-2). He began teaching part-time in 1993, became a full-time teacher of history and social studies at Solomon-Plains Junior High School in 1999, was appointed as the head coach of the junior high wrestling team at Solomon-Plains in 2008, and was appointed as the head coach of the varsity wrestling team at the James M. Coughlin High School in 2014. (Doc. 26, at 1, ¶¶ 1-3; Doc. 30, at 9, ¶ 1-6). In 2001, Belles requested and was granted a teaching aide to help him

with tasks such as correcting exams and taking attendance.[3] (Doc. 26, at 2, ¶ 4; Doc. 30, at 2, ¶ 4; Doc. 24-1, at 7).

When the District appointed Belles as varsity head coach on May 12, 2014, neither Belles nor those who vetted and appointed him raised the issue of his disability or questioned whether Belles was qualified for and able to perform the demands of the position. (Doc. 26, at 1-2, ¶¶ 1-3; Doc. 30, at 9, ¶¶ 1-6, 11). Indeed, Belles was selected over four other (non-disabled) candidates for the position. (Doc. 26, at 2, ¶ 7; Doc. 30, at 2, ¶ 7). At the time of his appointment, wrestling season, which generally runs from November through March, had not yet begun. (Doc. 24-2, at 5; Doc. 24-1, at 6). As varsity head coach, Belles was expected to transition from running wrestling practices in the Solomon-Plains' gymnasium – where he had coached junior high wrestlers – to running practices out of Coughlin's lower-level wresting room, access to which was limited to steps. (Doc. 26, at 2, ¶ 8; Doc. 30, at 2, ¶ 9; Doc. 24-1, at 6). Frank Castano, the District's Human Resources Manager, was tasked with finding an accommodation for Belles given that Belles could not descend or ascend the stairs in his wheelchair. (Doc. 24-2, at 11).

On May 13, 2014, the day after Belles's appointment as varsity head coach, Castano informed Belles that unidentified students had called the District Board to voice complaints about the appointment. (Doc. 26, at 3, ¶ 11; Doc. 30, at 3, ¶ 11). There is no dispute that the complaints were made, but Belles and Castano have different recollections of the events as they actually transpired. Belles testified that Castano told him the school received phone calls,

---

[3] Among other accolades, Belles led the junior high wrestling team to one district and several conference championships during his tenure as head coach. (*See, e.g.*, Doc. 30, at 10, ¶ 8-9; Doc. 31, at 6).

indicated that "things changed," and suggested a scenario where Belles's nephew, Mark Belles, would become a high school coach and Belles would become a "floating coach" of sorts. (Doc. 30, at 3, ¶ 1; Doc. 24-1, at 15). Castano testified that Belles was upset about the complaints and asked Castano for advice about how to proceed. Belles was not satisfied with Castano's initial response (to "coach because he was appointed as coach"), the two "kick[ed] around ideas and th[e] [floating coach idea] was one of them," and Belles told Castano he would follow up by submitting a proposal, though no proposal was ever submitted. (Doc. 26, at 3, ¶ 11; Doc. 24-2, at 14).

The complaints about Belles's appointment did not end there. Robert Hawkins, former acting head coach for the varsity wrestling team, attended a June 2014 Board meeting and called the Board to complain about Belles. (Doc. 26, at 2-3, ¶ 10; Doc. 30, at 3, ¶ 10; Doc. 24-2, at 8).[4] Hawkins had recruited parents to rally against Belles and "also made a comment about [Belles's] disability because of [Belles's] inability to use [his] hands to write." (Doc. 24-1, at 25; Doc. 30, at 3, ¶ 10). The District received more calls, from students and parents, who, according to Castano's deposition testimony, had considered transferring school districts to

---

[4] Hawkins sent Belles an ominous text message warning, "the Coughlin wrestling program and all its history now rests on your shoulders. Moving out of that wrestling room and over to Solomon will most likely destroy it all." (Doc. 30, at 16-17, ¶ 47). According to Hawkins's deposition testimony, he had "personal problems with [] Belles" and trust issues unrelated to Belles's ability to coach. Specifically, when Hawkins's daughter was a seventh-grade student, she became a wrestling team manager under Belles but later determined that she could not be at every wrestling practice, which angered Belles, who then gave Hawkins's daughter an incomplete grade on a quiz. (Doc. 30-7, at 22-23). In an affidavit attached to his counterstatement of material facts, Belles avers that Hawkins's daughter "did not receive a bad grade. I had informed her on the day grades were due that she had missed a test, which she would need to make up or get a zero. I accommodated her to allow her to take the test later in that day, so she could study and not get a bad grade." (Doc. 30-8, at ¶¶ 1-2).

wrestle elsewhere. (Doc. 24-2, at 14).[5]

At some point – likely in either late May or June 2014, although no witnesses testified as to the precise date – District Superintendent Bernard Prevuznak told Belles that "numerous people had said practices must be in the Coughlin basement room and asserted himself that the practices could not be moved from there." (Doc. 30, at 13, ¶ 25; Doc. 24-1). Belles's testimony is that Prevuznak did not make this statement "in a nice way"; instead, "[i]t was like, they must stay here in the wrestling room." (Doc. 24-1).

On a subsequent occasion within the same timeframe, Belles met with Castano, Prevuznak, and Assistant Superintendent Brian Costello. (Doc. 26, at 4, ¶ 18; Doc. 30, at 14, ¶¶ 26, 218).[6] The meeting's attendees recount the events at that meeting very differently. Castano testified to a quick meeting, "no more than ten minutes," during which Belles was congratulated and assured that his disability would be accommodated. (Doc. 24-2, at 11). Belles testified that he had suggested to Castano, Prevuznak, and Costello several accommodations – holding practices in the "accessible" Coughlin gym or its cafeteria, moving practices to the Solomon-Plains gym where he had coached junior high students, or contracting with the company that had fixed his wheelchair to install a lift – each of which was rejected. (Doc. 30, at 4-5, ¶¶ 14, 18; Doc. 30, at 12).[7] Belles also testified that (1) "Castano

---

[5] Neither Belles nor Castano know the identity of the individuals who complained or the specific objections they raised.

[6] As for the exact date of this meeting, Castano testified it took place "[s]ometime over the summer. I don't know a date. It was after his appointment and before I tried to schedule [an] assessment" regarding an accommodation for Belles's access to Coughlin's wrestling room. (Doc. 24-2, at 11).

[7] Belles represented that "[s]ince or about 2015, Coughlin freshmen and sophomores who are on the Coughlin varsity wrestling team did not actually attend school at Coughlin,

discussed with him that there's two access points that they can get in"; (2) Prevuznak questioned Belles about where the wrestling mats would be stored if they moved practice locations, indicated that the Board did not want to expend funds to accommodate Belles's access to the Coughlin wrestling room, and indicated that there was a scheduling conflict that precluded them from holding practices at Solomon-Plains; and (3) no further comments were made concerning Belles's suggestion that they reach out to the company who fixed his wheelchair. (Doc. 24-1, at 18-19).

Prevuznak referenced the same meeting during his deposition. (Doc. 24-4, at 8-9). He testified to a "very supportive meeting that we are going to make this work at Coughlin High School," where practices had always been held, and "would adapt and accommodate [Belles's] disability to have it there." (Doc. 24-4, at 8-9). According to Prevuznak, he had initiated this meeting because he felt that Belles "was under a lot of stress." (Doc. 24-4, at 9).

In late June and early August 2014, the District made decisions antithetic to Belles's wishes. At an August 11, 2014 Board meeting, the District hired an associate head coach, David Parsnik,[8] and three assistant coaches, Castano, Hawkins (on a volunteer basis), and Ruben Prophete. (Doc. 30, at 16, ¶ 44; Doc. 24-4, at 11; Doc. 24-2, at 6). Both Parsnik and

---

but attend school at the Mackin building and must be bused from Mackin to Coughlin to participate in wrestling practices."

[8] Though one must apply to the Board to be considered for a coaching appointment, Parsnik had not done so and was selected for the position nevertheless. (Doc. 30, at 41-42; Doc. 24-2, at 9; Doc. 30-6, at 7).

Prophete had applied for the head position to which Belles was appointed in May 2014.[9] Belles had submitted his own candidates for these positions (and had opposed other potential candidates' appointments), but the District did not honor Belles's preferred hires. Belles testified that he had told Castano, Costello, Prevuznak, and Clifford Jones that he wanted to hire Jason Schlingman, and Belles's nephew, Mike Belles to be his assistant staff. (Doc. 24-1, at 29; Doc. 30, at 16, ¶ 40). Castano testified that he was never privy to Belles's final proposed hires, if any such final proposal had been submitted, because Belles had "changed his mind a few times . . . ." (Doc. 24-2, at 9). Neither Prevuznak nor Castano was involved in the hiring process. (Doc. 24-2, at 6; Doc. 24-4, at 11). Prevuznak candidly admitted that if he were head coach and the District hired an assistant who had objected to the head coach's hiring, he would find the situation difficult. (Doc. 24-4, at 11). Athletic Director Clifford Jones and Prophete testified similarly. (Doc. 30, at 17-18, ¶¶ 51, 55; Doc. 24-3, at 15; Doc. 30-5).

According to Belles, the District did nothing to further the provision of accommodations that would enable him to attend wrestling practices in the Coughlin wrestling room. (Doc. 30, at 4, ¶ 14, 19-20). Until, that is, on or about August 27, 2014, when Belles became aware of emails that Castano had sent but which Belles had not received due to issues with his email account. (Doc. 30, at 4, ¶ 19). Specifically, Castano had emailed Belles, copying Clifford Jones and Patrick Patte, on August 25, 2014, to schedule a meeting

---

[9] Belles avers that Prophete indicated he did not trust Belles simply because Belles was selected as head coach. (Doc. 30, at 17, ¶ 50). The excerpt from Prophete's deposition testimony to which Belles refers in support of this proposition is far more nuanced than his statement seems – in short, Prophete had testified that he did not trust Belles because Prophete knew of three people (including himself) who had applied for and been chosen for consideration for the head coach position, and yet the Board "threw all that out and selected [Belles]." (Doc. 30-5).

with a company to assess whether they could install a lift or ramp for wheelchair access to the basement wrestling room. (Doc. 26, at 3-4, ¶¶ 14-16; Doc. 30, at 4, ¶¶ 14-16; Doc. 24-1, at 77 (Dep. Ex. C)).[10] On August 27, 2014, Castano sent another email, copying Jones, Patte, and Prevuznak, indicating to Belles that he contacted the company that had constructed lifts in Belles's house, but that company was unable to do the work, so he contacted another company. (Doc. 26, at 3, ¶¶ 12-13). In the same email, Castano indicated that he had scheduled a meeting for August 28, 2014, at 10 a.m., with the second company he had contacted – Castano invited Belles to attend, indicating that Belles's attendance "would be helpful to do a complete assessment." (Doc. 24-1, at 77).[11]

On August 28, 2014, Belles resigned from his position as head coach to the varsity wrestling team, and the District later accepted his resignation. (Doc. 26, at 5, ¶ 24; Doc. 30, at 7, ¶ 24).[12] After being tipped off about the meeting scheduled for that morning, Belles felt as if he was going to be fired, as he was unaware of any attempts to accommodate him and not privy to the real purpose of the meeting, only that people were unhappy with his appointment. (Doc. 30, at 18-19, ¶¶ 57-58). Partially fueling Belles's belief that he was going

---

[10] At his deposition, Jones testified that the first time he became aware about the possibility of the District procuring lift- or ramp-installation services from a company was in this email. (Doc. 24-3, at 13).

[11] As mentioned, *supra*, Belles never received these emails, and though he avers that he could not have received them because his email account was down at the time, he also vehemently denies ever conceding the emails were sent. (*See, e.g.*, Doc. 30, at 4, ¶¶ 14-16).

[12] The Court acknowledges Belles's disagreement with Defendants' characterization that he "resigned" rather than that he was "constructively discharged." The Court does not intend to further any mischaracterizations, but Belles did, in fact, officially resign. However, in doing so he is not estopped from arguing that he was constructively discharged – indeed, the very basis of such a claim is where "[a]n employer's creation of working conditions [] leave a particular employee . . . little or no choice but to resign . . . ." *See* Discharge, Black's Law Dictionary (11th ed. 2019).

to be terminated was Castano's August 26th and 27th text messages asking Belles to check his email account for important emails. (Doc. 24-1, at 110). Having no context, his email account having been inoperable, Belles apparently feared the worst. Based on the texts and his post-appointment travails, Belles approached Castano earlier in the day on August 28th, stating that he wished to resign, after which Castano asked Belles to write a very specifically worded resignation later. Sometime thereafter, Principle John Woloski approached Belles asking about the resignation letter in what Belles perceived as a harassing manner. Eventually, Belles wrote an email to Castano stating, in relevant part, "due to personal reasons I am resigning [the Coughlin head coach] position effective today August 28, 2014." (Doc. 24-1, at 77).

There are additional allegations advanced in Belles's complaint and throughout testimony adduced during the discovery phase of this case. Most notably, Belles alleged that Defendant Flynn had engaged in improper and harassing conduct during the process of having Belles's fingerprints taken. Belles is no longer proceeding against Flynn, *see supra* at 1 (citing Doc. 31, at 7 n.2), he has not incorporated any of these arguments in his statement and counterstatement of material facts (except by way denying, for other reasons, Defendants' assertion that Belles had alleged that Defendants embarrassed and humiliated him during the fingerprinting process in retaliation for Belles's resignation), and he makes not a single reference to this incident in his brief in opposition to Defendants' motion for summary judgement. (Doc. 26, at 5, ¶ 25; Doc. 30, at 7-8, ¶ 25; Doc. 31, *passim*). By all accounts, it appears that Belles is no longer basing his claim on this incident.

## II.  LEGAL STANDARDS

### A.  SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson,* 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Id.*

"Although the party opposing summary judgment is entitled to the 'benefit of all factual inferences in the court's consideration of a motion for summary judgment, the

nonmoving party must point to some evidence in the record that creates a genuine issue of material fact.'"[13] *Velentzas v. United States*, No. 4: CV -07-1255, 2010 WL 3896192, *7 (M.D. Pa. August 31, 2010) (quoting *Goode v. Nash,* 241 F. App'x 868, 868 (3d Cir. 2007)) (citation omitted). The opposing party "cannot rest solely on assertions made in the pleadings, legal memorandum, or oral argument." *Velentzas,* 2010 WL 3896192, *7. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Jakimas v. Hoffmann–La Roche, Inc.,* 485 F.3d 770, 777 (3d Cir. 2007).

## B.  DISCRIMINATION CLAIMS UNDER THE ADA AND PHRA[14]

The ADA prohibits employers from "discriminating 'against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Taylor,* 184 F.3d at 305 (quoting 42 U.S.C. ¶ 12112 (a)). To

---

[13] *See also Beenick v. LeFebvre,* 684 Fed. Appx. 200, 206 (3d Cir. 2017) (noting that the purpose of requiring parties to cite to particular parts of the record in their briefs about a motion for summary judgment is to "assist the court in locating materials buried in a voluminous record") (quoting Fed. R. Civ. P. 56(c)(1)(A)).

[14] Generally, the substantive elements of these causes of action are coextensive and therefore subject to the same analytical evaluation. *See, e.g., Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 306 (3d Cir. 1999) ("Before turning to the first issue, whether Taylor has a disability under the ADA, we mention that we will only discuss Taylor's ADA claim because our analysis of an ADA claim applies equally to a PHRA claim."); *see also Molyneaux v. Monroe Cty.,* No. CV 3:17-1865, 2020 WL 94079, at *5 n.3 (M.D. Pa. Jan. 8, 2020). As the court did in *Taylor*, this Court refers only to the ADA in setting forth the applicable substantive standards.

establish a claim under Title II of the ADA, a plaintiff must show "(1) that he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Dahl v. Johnston*, 598 F.App'x 818, 819–20 (3d Cir.2015) (citing 42 U.S.C. § 12132); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 n. 32 (3d Cir.2007). A "'qualified individual' [is] a person 'who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Gardner v. Sch. Dist. of Philadelphia*, 636 F. App'x 79, 83 (3d Cir. 2015) (quoting 42 U.S.C. § 12111(8)).

An employee seeking relief under the ADA can prove discrimination either through direct evidence of discrimination or circumstantially. Most commonly, cases involving non-direct, i.e., circumstantial, evidence in the ADA context are claims of disparate treatment. *See, e.g.*, *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 n.3 (2003) ("The Courts of Appeals have consistently utilized this burden-shifting approach when reviewing motions for summary judgment in disparate-treatment cases.").[15] Under the *McDonnell Douglas* framework, "a plaintiff must first establish a *prima facie* case of discrimination," the "burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action," and, "[i]f the employer meets this burden, the presumption of intentional discrimination disappears, but if the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual." *Raytheon*, 540 U.S. at 50. While *McDonnell Douglas* is generally inapplicable in the context of reasonable-

---

[15] Belles does not appear to assert nor allege facts supporting a disparate-impact claim here.

accommodation, hostile-work-environment, and constructive-discharge claims, it does control the assessment of a claim for retaliation. *See, e.g.*, *Montgomery v. City of Pittsburgh*, No. CV 16-248, 2017 WL 7940776, at *11 (W.D. Pa. Oct. 3, 2017) (applying to constructive-discharge claim the Third Circuit's reasoning for rejecting the application of *McDonnell Douglas* to hostile-environment claims), *report and recommendation adopted,* No. 2:16CV248, 2018 WL 1141733 (W.D. Pa. Mar. 2, 2018); *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (retaliation).

### III.   DISCUSSION

Before addressing each cause of action *seriatim*, the Court notes that the ADA generally does "not impose individual liability" and, as such, does not give rise to money damages in a claim against individual defendants. *Michalesko v. Freeland Borough*, 18 F. Supp. 3d 609, 626 (M.D. Pa. 2014) (citing *McInerney v. Moyer Lumber and Hardware, Inc.*, 244 F.Supp.2d 393, 398 (E.D. Pa. 2002)); *see also Ciferni v. Boilermakers Local 13*, 158 F. Supp. 3d 263, 267 (E.D. Pa. 2016) (dismissing with prejudice retaliation claims against individual defendants). Thus, if by asserting that "[a]t all times relevant, Castano was acting in his supervisory *and personal capacity*," (Doc. 1, at 3, ¶ 10 (emphasis added)), Belles means to assert a claim for money damages directly against Castano as an individual, such a claim is not cognizable. However, the law permits Belles to pursue his claim against Castano for prospective injunctive damages in the form of reinstatement of his position. *See, e.g.*, *Mohney v. Pennsylvania*, 809 F. Supp. 2d 384, 392 (W.D. Pa. 2011) ("The Court of Appeals for the Third Circuit has found that there is generally no individual liability under the ADA. An exception exists when an individual is sued for prospective injunctive relief." (citation omitted)).

A.  REASONABLE ACCOMMODATIONS

An employer who seeks an accommodation for a disability bears the initial burden of identifying a possible accommodation and showing that the cost of the accommodation does not clearly exceed its benefits. *Skerski v. Time Warner Cable Co., a Div. of Time Warner Entm't Co., L.P.*, 257 F.3d 273, 284 (3d Cir. 2001); *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580-81 (3d Cir. 1998). When faced with "a disabled employee's request for a reasonable accommodation, 'both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith.'" *Hohider*, 574 F.3d at 187 (quoting *Taylor*, 184 F.3d at 312). The employer need not "maintain the employment of a plaintiff whose proposed accommodation for a disability is clearly ineffective" but nonetheless shares the responsibility of suggesting reasonable accommodations through an "interactive process" with the employee. *Gardner*, 636 F. App'x at 84 (internal quotation marks and citation omitted). "This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations." *Tarpley*, 752 F. App'x at 349 (citing 29 C.F.R. § 1630.2(o)(3)). Thus, there are two avenues through which an employee can establish the third element of a failure-to-accommodate cause of action, by establishing that the employer failed to provide a reasonable accommodation, or the employer failed to engage in the interactive process. *See, e.g.*, *Willis v. Norristown Area Sch. Dist.*, 2 F. Supp. 3d 597, 606 (E.D. Pa. 2014).

Belles first argues that Defendants violated the ADA by failing to provide him with reasonable accommodations to permit him to coach the varsity wrestling team and by failing to engage in any interactive process whereby such accommodations could be suggested and ultimately provided. Defendants do not dispute that Belles is disabled and that he was

qualified for the head coaching position for which he was appointed. Thus, Belles's failure-to-accommodate claim turns on the third element: whether Defendants refused to make reasonable accommodations. *See Hohider*, 574 F.3d at 186.

Based on the record, the Court finds no genuine dispute of material fact concerning Defendants' purported failure to provide Belles with a reasonable accommodation. Defendants scheduled a meeting with a company for that purpose, to be held the same day Belles resigned, and Belles was invited to attend the meeting but did not receive the email invitation. Though Belles disputes the existence of any emails concerning the August 2014 meetings with the accessibility company, the evidence shows, at best, that Belles did not receive the emails through no fault of his own, or Defendants, and that the meeting was, in fact, scheduled to occur. Belles's contention throughout his submissions is that "[no] efforts to consider accommodations for Mr. Belles's attendance at his own practices were done *or made known to him* until August 27, 2014." (*See, e.g.*, Doc. 30, at 4, ¶ 19).[16] Given that wrestling season did not commence until November,[17] and concrete action had been taken in August, Belles's contentions are not sufficient to give rise to a triable issue of fact here. *See Parker v.*

---

[16] This statement, on its face, is belied by Belles own testimony that he had spoken with Prevuznak (and others) on at least two occasions prior to August 27, 2014. This testimony is inconsistent with Belles's assertion that no efforts had been taken to even consider accommodations.

[17] Belles's counsel notes a statement in Belles's application for the head coach position – "Wrestling champions are made between March and November" – which, it may be supposed, is meant to imply that Belles needed access to Coughlin's wrestling room well in advance of November. (Doc. 31, at 9). Aside from this isolated statement, however, no such argument is made, nor any evidence provided in support thereof. Additionally, as Defendants note, it is undisputed that the Pennsylvania Interscholastic Athletic Association's Constitution and By-laws provide that all sports have a defined season with which each school under the Association's control must comply. (Doc. 32, at 5).

*Verizon Pennsylvania, Inc.*, 309 F. App'x 551, 562 (3d Cir. 2009).

Further, by resigning on the eve of the meeting with the accessibility company, Belles foreclosed the possibility that a factfinder could find that Defendants failed to provide an accommodation. It may never be known what may have transpired had Belles remained a head coach, and to allow the claim to proceed on this ground would be to sanction jury speculation. *See, e.g.*, *Tarpley*, 752 F. App'x at 350 ("Despite her failure to follow City Colleges' policies, City Colleges considered Tarpley's request, but Tarpley resigned before City Colleges made a decision. Therefore, Tarpley's ADA reasonable accommodation claim fails—City Colleges never denied her request. Summary judgment in favor of City Colleges was appropriate.").

Nevertheless, Belles may also establish his claim by showing that Defendants failed to engage in the ADA's interactive process concerning claims of failures to provide reasonable accommodations. In the case of an "employee who tries to hold his/her employer responsible for a breakdown in the interactive process under the ADA," the employee must establish four elements:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Conneen*, 334 F.3d at 330-31.

While this is a *shared* "interactive process," the standard provides that "an employer is liable for discriminating against an employee in need of accommodation based upon the employee's *known* disability"—not a *known* accommodation—and thus the employee is not always required to suggest accommodations in order to trigger the employer's obligation to provide

such accommodations. *See Conneen*, 334 F.3d at 331.

Belles's resignation foreclosed the possibility of establishing the cause of action on this ground as well. While the interactive process is statutorily mandated, the case law does not support Belles's position that an employer is liable for failing to provide a reasonable accommodation where the employer ultimately takes steps to provide an adequate accommodation, but the employee then resigns. Though Defendants' attempts to engage in the interactive process are scant between May and August 2014, the undisputed record before the Court is that there were at least some meetings, wrestling season did not commence until November, and Castano had set up a meeting with the accessibility company in late August. Nothing in the record reflects any requirement, by Belles or otherwise, that the accommodations be done by a date certain.

Not all requested accommodations are appropriate, and the ADA only provides a right to reasonable accommodation, not to the employee's preferred accommodation. *Stadtmiller v. UPMC Health Plan, Inc.*, 799 F. Supp. 2d 492, 509 (W.D. Pa. 2011) (internal quotation marks omitted), *aff'd*, 491 F. App'x 334 (3d Cir. 2012). As such, the installation of a lift or ramp instead of moving practice (per Belles's suggestion) does not establish that no accommodations were offered. Simply put, there are no facts that would permit a jury to conclude that Belles "could have been reasonably accommodated but for the employer's lack of good faith." *See Conneen*, 334 F.3d at 330-31.

Belles's allegations, bereft of any evidentiary support,[18] are themselves inconsistent.

---

[18] The Court concurs with Defendants' assessment of the texts between Castano and Belles. A thorough review of each and every one of these texts reflects messages in which Castano is either supporting Belles or referencing other activity such as the complaints about

As mentioned above, Belles stated that "no efforts to consider" his accommodations had been made before August 27, 2014, but Castano necessarily considered Belles's situation, as he remembered that Belles had, at some point, suggested an accessibility company, and put into action a plan to meet with such a company. These allegations, particularly given the lack evidentiary support, are insufficient to create an issue of fact on Defendants' motion to dismiss. *See, e.g.*, *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) ("As a general proposition, conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." (internal quotation marks omitted)); *Irving v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011) (finding, in ADA claim, plaintiff's "self-serving deposition testimony [] insufficient to raise a genuine issue of material fact"). Finally, while Belles submits that, to avoid providing accommodations, Castano urged him to resign on August 28, 2014, that contention is not supported in the record and, in any event, came at the same time as Castano's efforts *to provide* an accommodation. *See, e.g.*, *Parker v. Verizon Pennsylvania, Inc.*, 309 F. App'x 551, 561 (3d Cir. 2009) ("Parker also argues that Broggi yelling at him, and stating that he had to resign because there were no available positions for him with his restrictions, demonstrate Verizon's failure to engage in the interactive process. However, this single comment was made immediately before Verizon transferred him to a position in the off-line group at the facility closer to his home and therefore does not provide evidence for a reasonable jury to conclude that Verizon failed to engage in the interactive process in good faith.").

For these reasons, the Court finds that a reasonable juror could not conclude that the

---

Belles's appointment, or where he asked Belles to check or draft emails. None of these raise a genuine dispute of material fact.

Defendants denied Belles reasonable accommodations or failed to engage in an interactive process. As such, Defendants' motion for summary judgment on this claim will be granted.

B. HOSTILE WORK ENVIRONMENT

Contextualized within the framework of the ADA, Belles's claim of discrimination based on his disability (Doc. 31, at 18-22) is essentially a hostile-work-environment cause of action. To establish a *prima facie* case of such cause of action under the ADA, an employee must show that:

> (1) [he] is a qualified individual with a disability under the ADA; (2) []he was subject to unwelcome harassment; (3) the harassment was based on h[is] disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) [the employer] knew or should have known of the harassment and failed to take prompt effective remedial action.

*Ballard-Carter v. Vanguard Grp.*, 703 F. App'x 149, 151-52 (3d Cir. 2017) (quoting *Walton v. Mental Health Ass'n*, 168 F.3d 661, 667 (3d Cir. 1999)).

To be sufficiently severe or pervasive, the harassment must "'alter the conditions of the victim's employment and create an abusive working environment.'" *Ballard-Carter*, 703 F. App'x at 152 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). Courts consider "all the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Lowenstein v. Catholic Health E.*, 820 F. Supp. 2d 639, 647 (E.D. Pa. 2011) (quoting *Walton*, 168 F.3d at 667). The ADA, however, "does not make all harassment, or every unpleasant working environment, actionable under the law. Rather, to constitute a hostile work environment under the ADA the harassing conduct must be *because of* the plaintiff's disability." *Griffin v. Municipality of Kingston*, No. 3:08–CV–2290, 2011 WL 718697, at *5 (M.D. Pa. Feb. 22, 2011) (emphasis in

original) (internal quotation marks omitted) (quoting *Walton*, 168 F.3d at 667).

The Court considers the harassment and discriminatory conduct that allegedly befell Belles in 2014, including his assertions that (1) Castano told him to resign, (2) Defendants did not engage in a "good faith" interactive process, (3) Hawkins's complaints about Belles, objection to Belles's appointment, and text indicating that a relocation of the wrestling practice space would destroy Coughlin wrestling, and (4) the District Board appointment of Hawkins as an assistant coach.

Under the *Ballard-Carter* factors, there is no dispute that Belles was disabled under the ADA and that he perceived he was being harassed following his appointment as Coughlin's head coach. Nevertheless, a review of the record reveals no genuine issue of material fact so as to overcome summary judgment on this hostile-work-environment claim. At the outset, the Court notes that Belles's testimony is often speculative, including conclusory assertions concerning the intent behind all Defendants' conduct. For example, when asked about the reasons behind the District's rejection of his proposed assistant coaching staff, Belles testified, "I think everything that they did, all actions they took, had something to do with my disability." (Doc. 24-1, at 29).

Belles allegation that Castano requested that he resign is not supported by the record. Castano testified that he told Belles, in essence, to ignore the complaints and coach because that was what Belles was hired to do. According to Castano, Belles had asked him for advice, after which Castano and Belles kicked around the idea of Belles becoming a floating "CEO" coach. Consistent with Castano's statements, Belles testimony indicates that the two did "kick" around ideas, though Belles never agreed with the proposals. (*See, e.g.*, Doc. 24-1, at 16). There is no non-conclusory support for Belles's contention that Castano's proposals were

a result of Castano's reluctance to help accommodate Belles's disability.

Regarding Hawkins's conduct, nothing in Belles's allegations suggests that Defendants were "in league" with Hawkins, a volunteer coach, such that the District could be held liable for Hawkins's actions. As Defendants note, all complaints relayed from Castano to Belles were complaints made by other people, namely Hawkins. The record reveals no evidence that Hawkins's conduct – the complaints about Belles, objection to Belles's appointment, and text – should be imputed to Defendants. The appointment of Hawkins, a long-time wrestling coach for the district, to the assistant head coach position does not create a factual issue for jurors. In opposing Defendants' motion, Belles has only proffered his own conclusory assertion that Hawkins's appointment constituted harassment animated by discriminatory intent based on Belles disability.

Other instances of alleged harassment – e.g., parents' and students' complaints about Belles's appointment, and Prevuznak having yelled, "I'm going to tell you right now . . . . The Board does not want to pay for a wheelchair lift so that you can get into the wrestling room" – may raise issues of fact, as Prevuznak denied ever yelling at Belles, but not *material* fact. The parents' and students' conduct is not synonymous with Defendants' conduct, and Prevuznak's single instance of yelling without any evidence of discriminatory intent is, without more, not evidence of a hostile environment. *See, e.g.*, *Greer v. Mondelez Glob., Inc.*, 590 F. App'x 170, 174 (3d Cir. 2014) (affirming summary judgment where plaintiff had failed "to show how the [race-evocative] comments support her claim that her workplace was "permeated with discriminatory intimidation, ridicule, and insult."). Even Belles stated that Prevuznak was concerned that the cost of a lift would be prohibitive, not that Prevuznak was discriminating against Belles or harassing Belles for being disabled. In any event, Belles

cannot overcome Defendants' motion as to this cause of action by relying on the reasonable-accommodation claim, the bases for which the Court has rejected because they do not raise an issue of material fact.

For these reasons, the Court finds that a reasonable juror could not conclude that the Defendants created a hostile work environment, and as such, Defendants' motion for summary judgment on this claim will be granted.

C.   RETALIATION

When asserting ADA-based retaliation, a plaintiff-employee must show that the protected activity she engaged in was the determinative factor motivating the defendant-employer to take the adverse employment action. *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 n.8 (3d Cir. 2007) (citing *Caver v. City of Trenton*, 420 F.3d 243, 267 (3d Cir. 2005); *Watson v. SEPTA*, 207 F.3d 207, 215 (3d Cir. 2000)); *Diffenderfer v. Pa. State Emps. Credit Union*, 2018 WL 1428164, at *4 (M.D. Pa. Mar. 22, 2018) (citing *Gillette v. Donahoe*, 622 F. App'x 178, 181 (3d Cir. 2015)). A *prima facie* case of retaliation requires evidence that the plaintiff engaged in protected activity, adverse action was taken against him, and there was a causal connection between the protected activity and the adverse action. *Moore v. Temple Univ.*, No. 13-5079, 2016 WL 4061352, at *6 (E.D. Pa. July 29, 2016), *aff'd*, 674 F. App'x 239 (3d Cir. 2017). To satisfy the causation element, a plaintiff "must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Moore*, 2016 WL 4061352, at *6. Where the timing between a plaintiff's protected activity and the adverse action is not unusually suggestive, "[t]emporal proximity by itself is generally insufficient to establish a causal connection." *Youssef v. Anvil Int'l*, 595 F. Supp. 2d

547, 563 (E.D. Pa. 2009). Whether temporal proximity is sufficiently suggestive to establish causation, however, is dependent on the facts of each case, and an analysis of the probative value of circumstantial evidence in retaliation cases is intensively fact-bound and -specific. *Romanaskas v. Earthbox, Inc.*, No. 3:16-CV-00517, 2018 WL 1370876, at *3-4 (M.D. Pa. Feb. 23, 2018), *report and recommendation adopted*, No. 3:16-CV-517, 2018 WL 1370612 (M.D. Pa. Mar. 16, 2018).

In opposing Defendants' motion for summary judgment on his retaliation claim, Belles relies on "the same evidence which establishes [his] discrimination [i.e., hostile work environment] claim." (Doc. 31, at 23). He does specifically assert, however, that it was not until after Prevuznak screamed at Belles and told him that they would not provide a wheelchair lift that the District "appoint[ed] the antagonistic and hostile assistant coaches" and "diminish[ed] [his] role by assigning him" an associate head coach.[19] (Doc. 31, at 23).

Having carefully reviewed the record, the Court finds that Belles has not demonstrated a genuine issue of fact sufficient to overcome Defendants' summary judgment motion as to this cause of action. First, Belles has not offered anything beyond his own allegations to raise an issue of fact concerning Defendants' evidence that Prevuznak did not scream or threaten Belles and that the assistant and associate head coaches were not hired (and Belles's proposed coaches *not* hired) in retaliation for Belles's appointment. Second, to the extent Belles is relying on arguments raised in other portions of his brief, the Court has already determined these do not create an issue of fact as to discriminatory intent. Third, the mere refusal to hire assistant coaches, the hiring of an associate coach, and the one-time *proposal* that he become

---

[19] Testimony establishes, and there is no evidence to the contrary, that the hiring of an associate or "co" coach was not the norm.

a floating CEO wrestling coach do not suffice to establish sufficient "adverse conduct."

Moreover, Castano testified, and nothing in the record reflects otherwise, that it is the District Board, and not existing coaches, that appoints coaches.[20] The witnesses most involved in these incidents (Castano and Prevuznak) testified to having no role in the appointments, a proposition unrefuted in the record. The record is devoid of any evidence of any nexus between his request for accommodations (the protected conduct) and the District Board's hiring decisions. In this regard, significantly, Belles testified that he could not recall whether he ever even mentioned that he needed a particular staff in order to accommodate his disability. (Doc. 24-1, at 45); *see, e.g.*, *Arana v. Temple Univ. Health Sys.*, 776 F. App'x 66, 71 (3d Cir. 2019) ("An employee must say or do something to put her employer on notice that she would like to be accommodated at work."). By his own admission, Belles's was an award-winning coach, undercutting any argument that Defendants should have known he needed more than an access-to-facilities accommodation in the form of special staff.

Finally, even assuming Belles established a *prima facie* case of discrimination, Defendants proffer evidence of a legitimate, nondiscriminatory reason for hiring the other coaches and, through Castano's testimony, proffered non-discriminatory reasons for the District's rejection of Belles's proposed hires: "Unfortunately, one withdrew, the other one didn't apply, and the third was not appointed, but we were looking at ways to include him,

---

[20] *See, e.g.*, *Kocher v. Municipality of Kingston*, 400 F. Supp. 3d 138, 154 (M.D. Pa. 2019) ("Since neither the Chief nor Ravello had any authority with respect to the determination of whether plaintiff received an interview nor was hired for the detective position, there was no causal connection between plaintiff's request for reasonable accommodation, the alleged harassment, and the failure of plaintiff to receive the detective position.").

Mark [Belles] specifically." (Doc. 24-2, at 17).[21] In contrast, there is no evidence beyond conclusory and speculative assertions concerning the motives of the actors involved.

To the extent Belles's relies on his constructive discharge claim to support his retaliation theory of liability, "[v]oluntary resignation is not an adverse employment action." *Larochelle v. Wilmac Corp.*, 769 F. App'x 57, 60-61 (3d Cir. 2019) ("Because Defendants did not terminate or take an adverse employment action against Riker, [who had voluntarily resigned], the District Court properly granted summary judgment for Defendants on Riker's retaliation and wrongful discharge claims.").

For these reasons, the Court finds that a reasonable juror could not conclude that the Defendants retaliated against Belles. As such, Defendants' motion for summary judgment on this claim will be granted.

D.  CONSTRUCTIVE DISCHARGE

Finally, Belles argues that Defendants constructively discharged him from his appointment as head coach to the Coughlin varsity wrestling team. Claims of constructive discharge are evaluated under an objective test according to which courts must, on a motion for summary judgment, "determine whether a reasonable jury could find that the [employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502 (3d Cir. 2010) (alteration in original) (internal quotation marks omitted) (quoting *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 (3d Cir.2001)). Courts consider whether the employer (1) threatened to discharge the

---

[21] A text exchange between Castano and Belles reveals that there was interest in hiring Mark, his nephew, on a volunteer basis. In response, Belles wrote that Mark had no interest in being a volunteer coach.

employee, (2) demoted the employee, (3) reduced the employee's salary or benefits, (4) transferred the employee (against his or her wishes) to a less desirable position, (5) altered the employees job responsibilities, or (6) gave unsatisfactory job evaluations. *Colwell*, 602 F.3d at 502 (internal quotation marks omitted). Given the objective standard, the "employee's subjective perceptions [do not] govern a claim of constructive discharge." *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir. 1992) (internal quotation marks omitted).

For the same reasons that Belles "has failed to substantiate an actionable hostile work environment claim," he also "fails to meet the more stringent requirements of a hostile-environment constructive discharge claim." *See Mufti v. Aarsand & Co.*, 667 F. Supp. 2d 535, 553 (W.D. Pa. 2009). Nevertheless, after separating Belles's subjective statements from objective evidence of conditions that, according to him, precipitated his resignation, Belles has failed to establish a triable fact as to this cause of action. Looking at the first factor considered under *Colwell*, 602 F.3d at 502, there is no evidence that Defendants threatened to discharge Belles. The Court has rejected as unsupported Belles's claim that Castano urged him to resign, and Belles's self-serving testimony and allegations do not support that assertion. Nor can the Court accepted Belles argument that by asking Belles to write a resignation email (after Belles stated his intention to resign), Castano exhibited conduct corroborative of an intention to urge Belles to resign.

Considering the other relevant factors, there is no indication that Belles was going to be demoted, that he suffered a reduction in salary or benefits, that his job responsibilities were altered, or that he was given unsatisfactory job evaluations. While Belles argues that the District effectually demoted him by hiring an associate "co" coach, it cannot be said that an objectively reasonable person would find additional help from a co-coach to be a demotion.

There is no dispute that until the day he resigned, Belles was head coach to the varsity wrestling team. He may not have liked the District's decisions, but these decisions do not permit a trier of fact to find that Belles was demoted.

Notably, in support of this and other causes of action, Belles relies heavily on allegations of Defendants' conduct vis-à-vis Belles's need for an accommodation. Regarding this final cause of action, for example, Belles argues his resignation was fueled, in large part, due to Defendants' "complete disavowal of any intent to accommodate." For the reasons stated herein, Belles testimony and assertions do not establish that he was denied reasonable accommodations, particularly given that there was some engagement in the interactive process among the key players involved, and more importantly, action was ultimately taken in the form of scheduling a meeting with an accessibility company. Indeed, Belles himself testified to having spoke with Castano sometime before August 27, 2014, regarding the accessibility company, a fact which is corroborated by Castano's conduct in scheduling a meeting. Belles stresses that he never received Castano's emails setting up the meeting, but "nothing requires employers to include the employee . . . in every discussion of possible accommodations or evaluations as part of engaging in the interactive process." *See Parker v. Verizon Pennsylvania, Inc.*, 309 F. App'x 551, 562 (3d Cir. 2009).

For these reasons, the Court finds that a reasonable juror could not conclude that the Defendants constructively discharged Belles. As such, Defendants' motion for summary judgment on this claim will be granted.

## IV. CONCLUSION

Based on the foregoing,[22] Defendants' motion for summary judgment (Doc. 24) is **GRANTED**, judgment is granted in favor of Defendants, and the Clerk of the Court is directed to close this case.

An appropriate Order will follow.

Dated: March 3, 2020

*s/ Karoline Mehalchick*
_____
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

---

[22] Because the Court finds that Defendants' have established their entitlement to summary judgment, it does not reach their arguments concerning immunity.